# In the United States Court of Federal Claims

No. 24-1729
(Filed: July 31, 2026)

* * * * * * * * * * * * * * * * * * *
**SAMARA L. A. SIMMONS,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.
* * * * * * * * * * * * * * * * * * *

*Stewart H. Deming*, Deming PLLC, of Washington, D.C., for Plaintiff.

*An Hoang*, Trial Attorney, with whom were *Elizabeth M. Hosford*, Assistant Director, *Patricia M. McCarthy*, Director, and *Brett A. Shumate*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, all of Washington, D.C., for Defendant.

## OPINION AND ORDER

**SOMERS**, Judge.

Plaintiff Samara L. A. Simmons brings this action against the United States for the alleged breach of a settlement agreement between Plaintiff and the United States Department of State ("State Department"). Plaintiff claims that the State Department failed to destroy or expunge certain records in accordance with the agreement, resulting in economic, noneconomic, and consequential damages. As will be discussed more fully below, although Plaintiff's complaint is prolix in its allegations, at base it lacks the plausible factual allegations necessary to support her alleged harms. It is with this fatal flaw in mind that the Court turns to the government's motion to dismiss before it. Because of Plaintiff's deficiencies in pleading and other deficiencies explained below, the Court grants the government's motion to dismiss Plaintiff's complaint.

## BACKGROUND

### A. Facts

This case was originally filed in the United States District Court for the District of Columbia. *See Simmons v. Blinken*, No. CV 23-2437 (JEB), 2024 WL 3273321 (D.D.C. July 2, 2024), *vacated in part*, No. CV 23-2437 (JEB), 2024 WL 5697419 (D.D.C. Oct. 10, 2024). It was then transferred to the United States Court of Federal Claims on October 23, 2024. ECF Nos. 27, 28. As the district court previously observed, although Plaintiff's complaint is "unnecessarily prolix" and "spares no detail in recounting the events that led to this suit," the case ultimately turns on a limited set of incidents resolved by the settlement agreement at issue. *See Simmons*, 2024 WL 3273321, at *1. Accordingly, the Court recounts here only the facts relevant to the claims presently before it and will not reiterate the myriad extraneous information contained in the complaint.

Plaintiff has worked at the State Department since September 2013. ECF No. 48 ¶ 51. Initially assigned to the U.S. Consulate in Ciudad Juarez, Mexico, *id.*, Plaintiff eventually found her way to the Overseas Citizen Services/American Citizen Services within the Bureau of Consular Affairs, where she presently serves as a Country Officer, *id.* ¶ 54. At the State Department, Plaintiff has endured what she describes as a series of discriminatory and retaliatory acts, including "target[ing] . . . Plaintiff due to her perceived physical and mental disabilities as a sexual assault survivor and for a medical condition, which State also perceived as a physical and mental disability." *Id.* ¶ 3. Plaintiff further alleges that, even after initial investigations cleared her to continue working for the State Department and to maintain her security clearance, "the discriminatory and retaliatory conduct toward Plaintiff only intensified," with "State officials [going] so far as to illegally obtain Plaintiff's medical records and grant unauthorized personnel access to the records." *Id.* ¶ 4; *see also id.* ¶¶ 49–97 (comprehensively detailing the above allegations).[1]

Because of this alleged conduct, Plaintiff contacted the Equal Employment Opportunity ("EEO") official in the State Department's Office of Civil Rights and ultimately filed a complaint against the State Department on February 29, 2016. *Id.* ¶¶ 1, 14. Eventually, this led to the parties' settlement of Plaintiff's claims on March 8, 2019. *Id.* ¶ 16; *see* ECF No. 18-6 at 32–35 (hereinafter "Settlement Agreement").[2] In the settlement agreement, Plaintiff agreed to "relinquish, waive, forego, forever discharge, fully release, and quit for all time" her discrimination and retaliation claims that were pending before the EEOC. *See* Settlement Agreement ¶ 3(b); ECF No. 48 ¶ 16 (listing the four pending claims at issue). In return, the government agreed to "pay a lump sum amount of [$29,000] to [Plaintiff's] attorney . . . as a

---

[1] For a more detailed factual summary than what is presented in this opinion—but still streamlined and limited to the facts relevant to this case—see *Simmons*, 2024 WL 3273321, at *1–2.

[2] Oddly, in a case alleging breach of a settlement agreement, Plaintiff did not find it prudent to attach the agreement at issue to her transfer complaint or otherwise provide a copy to this Court.

compromise and full and final settlement of any and all claims for damages and/or attorney fees specifically for the above-captioned matter, and the [government would] have no further liability for damages, fees, costs, or expenses in the above-captioned matter." Settlement Agreement ¶ 4(a); *see* ECF No. 48 ¶ 19. Furthermore, the government was to "destroy all copies . . . of any medical records related to [Plaintiff] obtained from East Orange General Hospital . . . currently in the possession of the [government]." Settlement Agreement ¶ 4(b); ECF No. 48 ¶ 17. Moreover, the government was to "expunge [from] all copies . . . of the security file maintained regarding [Plaintiff] by the Agency's Bureau of Diplomatic Security ("DS Security File") . . . any information discussing [Plaintiff] being a victim of sexual assault," as well as any references to five delineated categories of information. Settlement Agreement ¶ 4(c); ECF No. 48 ¶ 18.[3]

Additionally, the settlement provided a process for handling violations of the agreement under the framework of 29 C.F.R. § 1614.504: "[I]f [Plaintiff] believes that the [government] has failed to comply with the terms of this agreement, [Plaintiff] shall notify the Director, Office of Civil Rights . . . in writing . . . within 30 days [of discovering] the alleged noncompliance." Settlement Agreement ¶ 5. Then, if "material noncompliance" was established under 29 C.F.R. § 1614.504, Plaintiff could "request that the terms of this Agreement be specifically implemented, or, alternatively, that [her civil] complaint be reinstated for further processing from the point processing ceased and the Parties returned to *status quo ante*." *Id*. Paragraph 5 also provided that if Plaintiff was "dissatisfied with the [government's] attempt to resolve compliance related matters, she may file an appeal with the EEOC." *Id.*

After execution of the Settlement Agreement, Plaintiff, seeking to verify the government's compliance, filed a Freedom of Information Act ("FOIA") request to the State Department's Bureau of Diplomatic Security for all records in her security file. ECF No. 48 ¶¶ 21–22. Subsequent FOIA litigation purportedly led to "numerous disclosures demonstrating that [the government had] breached the Settlement Agreement." *Id.* ¶ 24. Plaintiff alleges that, in violation of the agreement, the government maintained documents containing the five categories of information explicitly covered by paragraph 4(c). *See id.* ¶¶ 25, 28–32. From these disclosures, Plaintiff also claims that she "had reason to believe that copies of the [East Orange General Hospital] records subject to paragraph (b) of the Settlement Agreement were still in the possession of State." *See id.* ¶ 36.

### B. Procedural History

Under belief of breach and pursuant to the grievance procedures outlined in paragraph 5 of her settlement agreement, Plaintiff filed claims with State Department's Office of Civil Rights in both May and August of 2022. *See id.* ¶¶ 34, 37. In both cases, the Office of Civil Rights issued final decisions finding that the government did not breach. *Id.* ¶ 37. Plaintiff's subsequent appeals to the Office of Federal Operations of the EEOC, as well as requests for reconsideration, were likewise denied. *Id.*

---

[3] The agreement further clarified that Plaintiff's "DS Security File" included "those records that were produced to [Plaintiff] in redacted form" during settlement discussions. Settlement Agreement ¶ 4(c).

After receiving dissatisfactory outcomes through administrative routes, Plaintiff filed suit in district court. Plaintiff's complaint initially contained four counts but was later amended to add a fifth. *See Simmons*, 2024 WL 3273321, at *3. Count I was titled "Breach of EEOC Settlement Agreement," while Counts II through IV "sought to reinstate the underlying Rehabilitation Act claims that were resolved by the agreement." *Id.* at *3. Count V "seem[ed] to allege violations of the Rehabilitation Act's confidentiality provisions, which prohibit the disclosure of confidential medical information." *Id.* at *6.

The district court initially dismissed all of Plaintiff's claims. *See id.* at *8; *see also Simmons*, 2024 WL 5697419, at *1 ("The Court dismissed Count I—titled 'Breach of EEOC Settlement Agreement'—for lack of subject-matter jurisdiction, Counts II–IV as unripe for judicial resolution, and Count V for failure to state a claim." (citation omitted)). However, in dismissing Count I, the district court noted that it "belong[ed] in the Court of Federal Claims and not here." *Simmons*, 2024 WL 3273321, at *4. Plaintiff then moved the district court to amend or alter its order, requesting vacatur of the dismissal and either leave to amend the complaint or transfer Count I to the Court of Federal Claims. *See Simmons*, 2024 WL 5697419, at *1. The district court, finding transfer appropriate, vacated its dismissal and transferred Count I to this Court on October 23, 2024. *See id.* at *3; ECF Nos. 27, 28. Plaintiff filed her transfer complaint on November 21, 2024. ECF No. 32. Following amendment, Plaintiff's third amended complaint,[4] ECF No. 48, is now the operative pleading before the Court and the subject of the government's motion to dismiss, ECF No. 49.

## DISCUSSION

### A. Legal Standard

The government moves to dismiss Plaintiff's third amended complaint under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, respectively.

#### 1. Rule 12(b)(1)

A challenge to the Court's "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999). Once subject matter jurisdiction is challenged, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). In evaluating whether to dismiss a case for lack of subject matter jurisdiction, the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). However, the Court is not required to credit conclusory or implausible allegations, nor to draw unreasonable inferences. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Once

[4] Of the three amendments reflected in that title, only one occurred after the case was transferred to this Court; the prior amendments were filed in district court.

jurisdiction is challenged, the Court may inquire into jurisdictional facts and consider materials beyond the pleadings in determining whether it has jurisdiction. *See Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991); *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014) ("If a motion to dismiss for lack of subject matter jurisdiction, however, challenges the truth of the jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute." (quoting *Reynolds*, 846 F.2d at 747)); *Pucciariello v. United States*, 116 Fed. Cl. 390, 400 (2014).

The Tucker Act confers subject matter jurisdiction upon the Court of Federal Claims over "any claim against the United States founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although this jurisdictional grant waives the sovereign immunity of the United States for claims premised on other sources of law, including contracts, it does not create a substantive cause of action. *See United States v. Navajo Nation*, 556 U.S. 287, 290 (2009). Accordingly, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005). A contract can be one such money-mandating source cognizable under the Tucker Act. *See, e.g.*, *Navajo Nation*, 556 U.S. at 290 ("[T]he (ordinary) Tucker Act[ ] waives immunity with respect to any claim 'founded . . . upon any express or implied contract with the United States . . . .'" (citation omitted)).

"It is axiomatic that a settlement agreement is a contract" for Tucker Act purposes. *See, e.g.*, *Greco v. Dep't of the Army*, 852 F.2d 558, 560 (Fed. Cir. 1988); *Cunningham v. United States*, 748 F.3d 1172, 1176 (Fed. Cir. 2014) (citing *Greco*, 852 F.2d at 560); Order and Opinion Denying Motion to Dismiss at 3, *Fields v. United States*, No. 18-186C (Fed. Cl. Dec. 12, 2018), ECF No. 17 (unpublished) (same). Moreover, the Federal Circuit has held that Tucker Act jurisdiction extends to claims for breach of Title VII settlement agreements: "We agree . . . that Tucker Act jurisdiction may be exercised in a suit alleging breach of a Title VII settlement agreement. We do not view Title VII's comprehensive scheme as a bar to the exercise of such jurisdiction." *Holmes v. United States*, 657 F.3d 1303, 1312 (Fed. Cir. 2011).

Even so, "[t]he government's consent to suit under the Tucker Act does not extend to every contract." *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008). "[C]ontracts that are entirely concerned with the conduct of parties in a criminal case, . . . [e]xpress disavowals of money damages within a contract's terms[,] . . . [or] relief for breach of contract [that] could be entirely nonmonetary" may remove a plaintiff's breach of contract claims from the jurisdiction conferred by the Tucker Act. *Higbie v. United States*, 778 F.3d 990, 993 (Fed. Cir. 2015) (citations omitted). However, the Federal Circuit has long recognized a presumption of monetary damages as a remedy upon the government's breach of a settlement agreement, so long as the plaintiff shows that "the agreements could fairly be interpreted as contemplating monetary damages in the event of breach." *See* Order and Opinion Denying Motion to Dismiss at 3–4, *Fields*, No. 18-186C (first quoting *Holmes*, 657 F.3d at 1314, then quoting *Higbie*, 778 F.3d at 993).

#### 2. Rule 12(b)(6)

In addition to dismissal for lack of subject matter jurisdiction, a court must also dismiss a claim under RCFC 12(b)(6) "when the facts asserted do not give rise to a legal remedy, or do not elevate a claim for relief to the realm of plausibility." *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (citations omitted); *see also Bd. of Supervisors of Issaquena Cnty., Miss. v. United States*, 84 F.4th 1359, 1364 (Fed. Cir. 2023) ("To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotations omitted)).

When deciding a motion under RCFC 12(b)(6), a court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 678. In applying this standard, the Court evaluates whether the complaint states a facially plausible claim for relief, a "context-specific task" that requires determining whether the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678–79. Although "[s]pecific facts are not necessary[,]" the complaint must nevertheless "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) (omission in original) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Thus, "mere conclusory statements" and "threadbare recitals of a cause of action's elements" are inadequate. *Iqbal*, 556 U.S. at 663; *see also Twombly*, 550 U.S. at 557 (rejecting complaints that offer only "naked assertion[s]" devoid of "further factual enhancement"); *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

### B. Analysis

#### 1. Some of Plaintiff's Claims Are Not Within the Court's Subject Matter Jurisdiction

In moving to dismiss Plaintiff's claims for lack of subject matter jurisdiction under RCFC 12(b)(1), the government makes three arguments. First, the government asserts that the complaint fails to plead claims within the Court's subject matter jurisdiction because the settlement agreement at issue "does not contemplate monetary damages in the event of breach" and "explicitly contemplates only equitable relief." ECF No. 49 at 9. Second, the government argues that Plaintiff's claims should be dismissed for "seek[ing] equitable relief beyond this Court's jurisdiction to grant[,]" particularly in the form of "the reinstatement of [Plaintiff's] EEOC claims pursuant to 29 C.F.R. § 1614.504(a) and paragraph 5 of the Agreement." *Id.* at 12 (citing ECF No. 48 ¶¶ 2, 36, 123). Finally, the government seeks dismissal of Plaintiff's claims for "noneconomic" damages to Plaintiff's "personal reputation, the invasion of her privacy as well as her humiliation, embarrassment, emotional distress, and loss of enjoyment of life" for sounding in tort. *Id.* at 13–14 (quoting ECF No. 48 ¶¶ 131, 151). The Court addresses each of these arguments in turn, concluding that: (1) Plaintiff's breach claims may fall within the Court's jurisdiction because there are sufficient indicia that monetary relief was contemplated in the event of breach for the settlement agreement to be money-mandating, and (2) the Court lacks subject matter jurisdiction over claims for equitable relief and those sounding in tort.

**a. Plaintiff has demonstrated that the Settlement Agreement can fairly be interpreted as contemplating money damages in the event of breach.**

To fall within the jurisdictional grant of this Court, Plaintiff must demonstrate that her settlement agreement could "fairly be interpreted as contemplating money damages in the event of breach." *Holmes*, 657 F.3d at 1315. The government argues that the agreement does not contemplate monetary relief as it "explicitly contemplates only equitable relief" and contains "no provision that provides monetary compensation in the event of a breach." ECF No. 49 at 9–10. The Court disagrees. Although the settlement agreement may be silent on the issue of money damages, its terms contain sufficient indicia that monetary relief was contemplated in the event of breach to be money-mandating.

*i. There is a general presumption of monetary damages in breach of contract claims.*

In analyzing subject matter jurisdiction under the Tucker Act, the Court has traditionally distinguished claims "arising under the Constitution, a statute, or a regulation" from "those stemming from a contract." *Holmes*, 657 F.3d at 1313 (citing *Eastport Steamship Corp. v. United States*, 178 Ct. Cl. 599 (1967)). Under this framework, it is generally recognized that the Tucker Act's money-mandating requirement is satisfied "by the presumption that money damages are available for breach of contract, with no further inquiry being necessary." *Id.* at 1314. As the Federal Circuit has explained, "in the area of government contracts, as with private agreements, there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement." *Sanders v. United States*, 252 F.3d 1329, 1334 (Fed. Cir. 2001). Indeed, the Supreme Court has observed that "damages are always the default remedy for breach of contract." *United States v. Winstar Corp.*, 518 U.S. 839, 885 & n.30 (1996) (citing RESTATEMENT (SECOND) OF CONTRACTS § 346 cmt. a (AM. L. INST. 1981)) ("Every breach of contract gives the injured party a right to damages against the party in breach" unless "[t]he parties . . . by agreement vary the rules[.]" (alterations in original)); *see also San Juan City Coll. v. United States*, 391 F.3d 1357, 1361 (Fed. Cir. 2004) ("Normally contracts do not contain provisions specifying the basis for the award of damages in case of breach . . . .").

Moreover, as Plaintiff correctly observes, the presence of a statutory remedial scheme does not remove a settlement agreement from a presumption of monetary damages. *See* ECF No. 50 at 11 (arguing that the settlement agreement's reference to the procedures in 29 C.F.R. § 1614.504(a) does not "preclude a suit for money damages in the event of breach that is separate from, or in addition to, the relief the regulation provides" (quoting *Holmes*, 657 F.3d at 1316)). This principle has been repeatedly affirmed by the Federal Circuit and applied by this Court. *See Holmes*, 657 F.3d at 1312 ("We do not view Title VII's comprehensive scheme as a bar to the exercise of such jurisdiction."); *Cunningham*, 748 F.3d at 1178 (rejecting the government's contention that the "comprehensive scheme" of the CSRA bars the plaintiff from seeking monetary damages for breach of contract in this Court); *Mata v. United States*, 107 Fed. Cl. 618, 623 (2012) (holding that "procedural language of the [settlement] agreement does not preclude this Court from exercising jurisdiction"); *Emanuele v. United States*, No. 11-345C, 2012 WL

3064852, at *2, *6 (Fed. Cl. July 27, 2012) (finding the Court of Federal Claims had subject matter jurisdiction over breach claims involving a settlement agreement, even when the agreement included provisions of 29 C.F.R. § 1614.504).

*ii. This Court has found sufficient indicia that monetary damages were contemplated where a settlement agreement (1) contemplates the plaintiff's potential future employment, (2) does not expressly disavow monetary relief, and (3) imposes specific duties on the government toward the plaintiff.*

Despite the general presumption that monetary damages are available for breach of contract claims, "[t]he government's consent to suit under the Tucker Act does not extend to every contract." *See Rick's Mushroom*, 521 F.3d at 1343. For example, a plaintiff's breach claims may fall outside the Court's jurisdiction where the contract wholly concerns the conduct of parties in a criminal case, expressly disavows money damages, or provides pure nonmonetary relief. *See Higbie*, 778 F.3d at 993; *see also Holmes*, 657 F.3d at 1314 ("That is not to say, however, that the existence of a contract always means that Tucker Act jurisdiction exists.").

And because settlement agreements in the employment context often involve pure nonmonetary relief, it is appropriate to require a plaintiff to show that a settlement agreement contemplated providing money damages in the event of breach. *See Holmes*, 657 F.3d at 1315 (explaining that because "settlement of a Title VII action involving the government could involve purely nonmonetary relief—for example, a transfer from one agency office to another," the Court of Federal Claims did not err "in requiring [the plaintiff] to demonstrate that [his settlement agreements] could fairly be interpreted as contemplating money damages for breach"); *see also Cunningham*, 748 F.3d at 1176 (cautioning that an alleged breach of a settlement agreement "does not necessarily give rise to Tucker Act jurisdiction" because a settlement involving "purely non-monetary relief" would not suffice). Indeed, monetary damages are not the routine remedy for breach of an employment settlement agreement. *See Holmes*, 657 F.3d at 1315 n.8 ("Typically, the employee's remedy is enforcement of the settlement terms or rescission of the settlement agreement and reinstatement of the underlying action." (citing *Harris v. Brownlee*, 477 F.3d 1043, 1047 (8th Cir. 2007))).

In assessing whether a settlement agreement fairly contemplated monetary damages in the event of breach, the Court has generally ruled for plaintiffs in cases in which the agreement addressed potential future employment and did not expressly disavow monetary relief. *Brizuela v. United States*, 103 Fed. Cl. 635, 639 (2012), *aff'd*, 492 F. App'x 97 (Fed. Cir. 2012) ("[T]he Agreement in this case contemplates the possibility of plaintiff's future employment . . . [and] does not contain language indicating that monetary damages are not available. Given the presumption that money damages are available for breach of a contract . . . , we find the Agreement can be fairly interpreted as contemplating monetary damages as an available remedy.").

For example, in *Holmes*, a former employee of the Navy alleged that he was unable to secure employment after the government violated two settlement agreements resolving his Title VII discrimination claims. 657 F.3d at 1306–08. Those agreements required the government to

amend the plaintiff's personnel records to reflect voluntary resignation, expunge references to his termination and fourteen-day suspension from those records, and provide him with a neutral job reference. *Id*. at 1306–07. The Federal Circuit reasoned that these provisions were intended to prevent the plaintiff from being disadvantaged in future employment based on the contents of his personnel file as it existed before the agreements. *Id.* at 1316. Because the agreements were tied to the plaintiff's future employment prospects, the circuit concluded that they "inherently relate[d] to monetary compensation." *Id*. The circuit further observed that the agreements lacked language "indicating that the parties did not intend for money damages to be available in the event of breach." *Id.* Thus, the circuit concluded that the agreements could be fairly read as contemplating monetary relief.

Similarly, in *Cunningham*, a former federal investigator claimed that the government violated a settlement agreement under which he agreed to dismiss his discrimination complaint with prejudice in return for a $50,000 payout, the expungement of references to his termination from his personnel file, and the provision of a neutral job reference. 748 F.3d at 1174, 1176. After his firing by a subsequent employer, the plaintiff learned that the government had breached its duties under the agreement. *Id.* at 1174–75. Relying on *Holmes*, the Federal Circuit determined that this agreement could likewise be read as contemplating monetary damages in the event of breach. *Id.* at 1177–78 ("As in *Holmes*, the purpose of the key settlement terms is 'to prevent [the former employee] from being denied future employment based on his record as the [agency] maintained it prior to the agreement[ ].' . . . Moreover, there is no language in the agreement 'indicating that the parties did not intend for money damages to be available in the event of breach.'" (alterations in original) (citations omitted)).

More recently, Judge Damich applied this precedent in *Fields*, a case in which the plaintiff agreed to dismiss her discrimination complaint arising from her termination in return for several commitments by the government: revising her personnel records to reflect a resignation for personal and family medical reasons rather than termination for lack of performance, providing neutral job references, sealing her records, conducting certain investigations, and reimbursing attorneys' fees incurred in the EEO process. Order and Opinion Denying Motion to Dismiss at 4, *Fields*, No. 18-186C; *see also Fields v. United States*, 147 Fed. Cl. 352 (2020), *aff'd*, 844 F. App'x 372 (Fed. Cir. 2021) (similarly discussing the government's obligations at the motion for summary judgment stage). Functionally, these obligations were aimed at eliminating barriers that could interfere with the plaintiff's ability to secure future employment. Order and Opinion Denying Motion to Dismiss at 4, *Fields*, No. 18-186C. Relying on *Holmes* and *Cunningham*, Judge Damich concluded that the plaintiff satisfied her burden of showing that the settlement agreement could reasonably be understood to provide for monetary damages in the event of breach. *See id.* at 5–6 (citing *Cunningham*, 748 F.3d at 1176–79; *Holmes*, 657 F.3d at 1316) (explaining that, as in the cited cases, the settlement agreement was structured to prevent future employment harm based on the employee's prior personnel record, and that nothing in the settlement agreement could be read to "expressly disavow" money damages).

The Federal Circuit's decision in *Higbie* further clarifies when a settlement agreement does or does not contemplate monetary damages. In *Higbie*, the plaintiff alleged breach of a confidentiality provision in a mediation agreement. 778 F.3d at 992. Because that agreement provided a nonmonetary remedy for breach, the circuit required the plaintiff to show that it

"fairly contemplated monetary damages." *Id.* at 994. However, the plaintiff failed to identify any contractual language or other evidence indicating that either party contemplated money damages; therefore, the circuit held that the agreement was not money-mandating. *Id.* Importantly, the opinion in *Higbie* distinguished its holding from those of *Cunningham* and *Holmes*. In a footnote, the Federal Circuit explained that, unlike the agreements in *Cunningham* and *Holmes*, the mediation agreement in *Higbie* consisted of "boilerplate common to agreements associated with similar mediation proceedings" and did not "create[] specific duties owed by the Government to th[e] particular plaintiff." *Id.* at 995 n.1. The agreement in *Higbie* merely governed the mediation process under standardized language and did not impose individualized substantive obligations on the government, and the plaintiff likewise did not argue that the agreement created any such obligations. *Id.*

The Federal Circuit further explained this distinction in *Baker v. United States*, 642 F. App'x 989 (Fed. Cir. 2016). There, the circuit observed that *Higbie* did not alter the general presumption that money damages are available for breach of contract. *Id.* at 992 (citing *Higbie*, 778 F.3d at 993; *Holmes*, 657 F.3d at 1314). Rather, *Higbie* turned on the nature of the agreement at issue: a boilerplate mediation agreement providing a specific nonmonetary remedy for breach versus a settlement agreement that "created specific duties owed by the Government to th[e] particular plaintiff," as in *Cunningham*. *Id.* at 992–93 (alteration in original) (quoting *Higbie*, 778 F.3d at 995 n.1). Applying that distinction, the *Baker* court held that the plaintiff's claim was "covered by *Holmes* and *Cunningham*, not *Higbie*." *Id.* at 993. There, the plaintiff alleged breach of a Title VII settlement provision crafted specifically for him and relating to his future employment, and the agreement contained no language limiting monetary relief for breach. *Id.* Accordingly, the Federal Circuit concluded that this Court's dismissal of the claim for lack of Tucker Act jurisdiction was in error. *Id.*

*Higbie* and *Baker* establish that a settlement agreement may fairly contemplate money damages when it imposes specific, individualized duties on the government toward a particular plaintiff, rather than merely generalized or procedural obligations. Taken with *Holmes*, *Cunningham*, and *Fields*, the Court is left with the following indicia to evaluate whether a settlement agreement fairly contemplates monetary damages and thus falls under the Court's Tucker Act jurisdiction: (1) whether the agreement concerns the plaintiff's future employment, (2) whether the agreement contains express disclaimers of monetary relief, and (3) whether the agreement creates specific obligations running from the government to that plaintiff.

*iii. In the instant case, there are sufficient indicia that monetary damages were fairly contemplated in the event of breach.*

In line with these cases, the Court finds the settlement agreement at issue to have fairly contemplated monetary damages in the event of breach because the agreement concerned Plaintiff's future employment prospects, did not expressly disavow monetary damages, and created specific duties owed by the government to Plaintiff.

First, the agreement considered Plaintiff's future employment. Like in *Holmes*, *Cunningham*, and *Fields*, Plaintiff withdrew her discrimination complaint in exchange for the government's promise to destroy certain personal records, *see* Settlement Agreement ¶ 4(b), and

expunge her personnel file of certain information, *see id.* ¶ 4(c). Although the settlement agreement does not explicitly reference future employment, it is reasonable to infer that the government's agreement to remove highly sensitive information from its records may have been made with future employment considerations in mind. *See* ECF No. 50 at 13 ("The records and information that the settlement agreement sought to destroy or expunge bore directly on Ms. Simmons' perceived fitness for employment both at the Department and elsewhere. Among others, the information from the records had been used to suspend her security clearance, to slow and defer her advancement, to prompt an insider-threat investigation, and to pursue efforts to force her from the Department." (citations omitted)). Furthermore, it is immaterial that Plaintiff did not seek a guarantee of neutral references from the government or any sort of amendment to her file that would be the equivalent of showing that she "resigned" for "personal reasons"; even without these terms, the agreement was still in the spirit of "remov[ing] certain obstacles that would impede the Plaintiff from obtaining future employment." Order and Opinion Denying Motion to Dismiss at 4, *Fields*, No. 18-186C.

Second, the settlement agreement did not expressly disavow monetary damages. Indeed, the settlement agreement included the payment of money damages when the parties entered it. *See* Settlement Agreement ¶ 4(a) ("Department will pay a lump sum amount of [$29,000.00] to Complainant's attorney . . . as a compromise and full and final settlement of any and all claims for damages and/or attorney's fees[,] . . . and the Department will have no further liability for damages, fees, costs, or expenses in the above-captioned matter."). Although the Court disagrees with Plaintiff's contention that inclusion of damages in the settlement agreement alone sufficed to establish Tucker Act jurisdiction, *see* ECF No. 50 at 12, the Court does credit this provision as an indicium of money-mandating status. After all, this is not a contract in which money did not change hands. In fact, at a minimum, if the government had breached by failing to pay the lump sum, Plaintiff would have been readily entitled to the full amount as monetary damages. Accordingly, money damages are not foreclosed as a remedy for breach, thereby belying any argument that the settlement agreement "expressly disavowed" monetary relief.

Finally, unlike in *Higbie*, the settlement agreement here creates specific obligations running from the government to Plaintiff. As was observed in *Baker*, the Federal Circuit did not find the mediation agreement in *Higbie* to be money-mandating because its boilerplate provisions failed to create a *specific* duty owed by the government that applied particularly to the plaintiff. *Baker*, 123 Fed. Cl. at 992–93 (quoting *Higbie*, 778 F.3d at 995 n.1). In contrast, the settlement agreement here was decidedly not boilerplate: it required the government to destroy Plaintiff's medical records that it had obtained from East Orange General Hospital, *see* Settlement Agreement ¶ 4(b), and expunge five specified categories of sensitive personal information from Plaintiff's security file, *see id.* ¶ 4(c). These stipulations are unique to Plaintiff, not standard provisions in the government's Title VII settlement agreements. Accordingly, the instant case does not follow *Higbie*.

In sum, the general presumption of monetary damages for breach coupled with the settlement agreement's contemplation of Plaintiff's future employment, its lack of any express disavowal of monetary remedies, and its creation of specific duties owed to Plaintiff establish sufficient indicia that monetary damages were fairly contemplated in the event of a breach.

Thus, the Court finds the settlement agreement to be money-mandating, placing most of Plaintiff's claim within the Court's subject matter jurisdiction.

**b. The Court lacks jurisdiction over Count I to the extent that Plaintiff seeks equitable relief and over Counts II and III to the extent that Plaintiff asserts tort claims.**

The Court turns next to Plaintiff's requests for equitable relief under Count I of her complaint and for damages sounding in tort in Counts II and III of her complaint. First, in Count I, beyond monetary damages, Plaintiff seeks "reinstatement of her underlying claims" pursuant to 29 C.F.R. § 1614.504(a) and paragraph 5 of the Settlement Agreement. ECF No. 48 ¶¶ 2, 123; *id.* at 36. In other words, Plaintiff seeks to have this Court reinstate her underlying claims and issue an injunction ordering the EEOC to resume processing them. However, this Court's power to grant equitable relief is limited to circumstances not applicable here:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records . . . . In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

28 U.S.C. § 1491(a)(2). In short, the relief that Plaintiff seeks in Count I of her complaint falls outside the grant contained in section 1491(a)(2), as Plaintiff does not seek restoration to office or position, placement in an appropriate duty or retirement status, or correction of applicable records. Moreover, although this Court has the "power to remand appropriate matters to any administrative or executive body or official," Plaintiff is not seeking a "remand" to an agency.[5] Plaintiff conceded as much at oral argument. *See* Oral Argument Recording at 54:30–55:11. Rather, Plaintiff seeks what would essentially be injunctive relief: Plaintiff requests that the Court issue an order compelling the EEOC to resume processing the claims underlying the settlement agreement. *See* ECF No. 48 at 36. The Court lacks authority to grant such relief under these circumstances. For these reasons, the Court grants the government's motion to dismiss to the extent that Plaintiff seeks equitable relief beyond this Court's jurisdiction.

Additionally, as the government notes, Plaintiff's complaint appears to sound in tort in different places. ECF No. 49 at 13–14 (citations omitted) ("Counts II and III . . . each seek damages that include 'noneconomic' damages to [Plaintiff's] 'personal reputation, the invasion of her privacy as well as her humiliation, embarrassment, emotional distress, and loss of enjoyment of life.' These claims . . . sound in tort."); *see also* ECF No. 48 ¶¶ 126, 131, 151, 155. The Court finds it clear that Plaintiff's chief claim is for breach of contract; however, it is not abundantly clear from the complaint that Plaintiff is fully disclaiming relief in tort. Plaintiff's

---

[5] A remand, of course, in the context of a trial court, essentially occurs when the reviewing trial court sends a matter back to an administrative agency for further action, usually to modify or reconsider a previous administrative decision. That is not what Plaintiff seeks here.

counsel did concede at oral argument that Plaintiff was not alleging independent tort claims. *See* Oral Argument Recording at 59:40–1:00:00. However, to the extent that Plaintiff *does* allege independent tort claims, the Court grants the government's motion to dismiss, as the Tucker Act explicitly proscribes this Court's jurisdiction over claims "sounding in tort." *See* 28 U.S.C. § 1491(a)(1).

In sum, the Court grants the government's motion to dismiss for lack of subject matter jurisdiction to the extent that Plaintiff's claims seek equitable relief or allege independent tort claims. However, the government's motion fails insofar as it argues that the settlement agreement did not contemplate monetary damages in the event of breach. Nonetheless, Plaintiff's remaining breach claims fall flat for the reasons explained below.

**2. Plaintiff Fails to State a Claim Upon Which Relief May Be Granted**

Although there are sufficient indicia that monetary damages were fairly contemplated in the event of breach to give the Court jurisdiction over the gravamen of Plaintiff's complaint, Plaintiff must still adequately allege and establish the requisite elements of a breach of contract claim to proceed. As distilled in *San Carlos Irrigation & Drainage District v. United States*, these elements are: "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." 877 F.2d 957, 959 (Fed. Cir. 1989).

Here, the government did not raise any arguments regarding the first two elements, thereby conceding that (1) there is a valid contract between the parties, and (2) an obligation or duty arose out of this contract. *See Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 58 (2021) ("A party's failure to raise an argument in an opening or responsive brief constitutes waiver."). While the government does not explicitly address the third element—breach of a duty—in its analysis of the *San Carlos* elements, it *does* maintain that it complied with the terms of the settlement agreement when addressing Plaintiff's argument concerning the implied covenant of good faith and fair dealing. *See, e.g.*, ECF No. 49 at 18–20 ("[T]he Amended Complaint fails to state a claim for a breach of the implied covenant of good faith and fair dealing under Count III because the alleged breach relies on obligations not contemplated in the Agreement."). Without reaching the inadequately briefed issue of breach, the Court proceeds to the fourth element, which it can resolve dispositively: whether Plaintiff has plausibly alleged damages caused by breach.

A plaintiff may only recover for breach of contract where he or she has demonstrated that damages were (1) reasonably foreseeable at the time of contracting, (2) caused by the breach of the promisor, and (3) proved with reasonable certainty. *Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001) (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 347, 351, 352). To establish causation, a plaintiff must demonstrate that the claimed damages "would not have occurred but for the breach" or that the breach was a "substantial factor" in causing the damages. *Rebish v. United States*, 134 Fed. Cl. 308, 320 (2017) (first quoting *Fifth Third Bank v. United States*, 518 F.3d 1368, 1374 (Fed. Cir. 2008), then quoting *Citizens Fed. Bank v. United States*, 474 F.3d 1314, 1318 (Fed. Cir. 2007)); *see also Fields*, 147 Fed. Cl. at 356 (citing cases explaining that a plaintiff must allege and prove that the damages would not have

occurred "but for" the breach, requiring a comparison between the breach and non-breach worlds and the pleading of a plausible but-for world); *Zulueta v. United States*, No. 09-681C, 2013 WL 363389, at *6–7 (Fed. Cl. Jan. 29, 2013), *aff'd*, 553 F. App'x 983 (Fed. Cir. 2014) (granting the government's motion to dismiss when the plaintiff failed to allege that the breach of her settlement agreement was the proximate cause of her claimed damages). In addition, contract damages may not place a plaintiff in "a position superior to the one it would reasonably have occupied had the breach not occurred." *Kansas Gas & Elec. Co. v. United States*, 685 F.3d 1361, 1366 (Fed. Cir. 2012) (quoting *LaSalle Talman Bank, F.S.B. v. United States*, 317 F.3d 1363, 1371 (Fed. Cir. 2003)).

As discussed below, Plaintiff has failed to plausibly allege her damages to a reasonable certainty, let alone allege that her damages would not have occurred but for the government's breach.

**a. Plaintiff's breach of contract claim falls short due to a failure to allege damages.**

As discussed above, Plaintiff need not *prove* anything at the 12(b)(6) stage: she need only allege enough facts to state a claim that is plausible on its face, to allow the court to draw a reasonable inference that the defendant is liable for the harms alleged, and to put the defendant on notice of what the claim is and on what grounds it rests. *See Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Iqbal*, 556 U.S. at 678. Moreover, the facts alleged must contain more than conclusory statements, recitals of a cause of action's elements, or naked assertions of harm. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557); *Bradley*, 136 F.3d at 1322.

Here, however, Plaintiff fails to allege facts that would allow the Court to reasonably infer harm caused by the government's misconduct. The government asserts in its motion to dismiss that Plaintiff's third amended complaint contains mere "generalized and conclusory statements simply repeat[ing] the basic damages element of a breach of contract claim . . . ." ECF No. 49 at 16. In response, Plaintiff counters that "[t]he Department's assertion is directly contradicted by the record" because "[t]he third amended complaint addresses in detail the manner in which Ms. Simmons was damaged." ECF No. 50 at 19 (citing ECF No. 48 ¶¶ 126–33, 151–57).

To then demonstrate that her allegations were not "generalized and conclusory," Plaintiff cites to the litany of legal conclusions littering the allegations in her complaint. *See id.* at 19–20.[6] However, in each of the instances listed below, Plaintiff neither (1) alleges her harms with particularity nor (2) demonstrates that the government's alleged breach was the but-for cause or a

[6] One such claim in Plaintiff's list is her claim for "[n]oneconomic and general damages to her professional and personal reputation, the invasion of her privacy, and the related humiliation, embarrassment, emotional distress, and loss of enjoyment of life." ECF No. 50 at 20 (citing ECF No. 48 ¶¶ 130, 154). Setting aside the fact that this claim is manifestly conclusory, it is also dismissed to the extent it sounds in tort, as discussed above. Thus, the Court need not go further in its analysis of this claim.

substantial factor in the causation of her alleged harms. The Court analyzes each conclusion in turn.

*i. Plaintiff's conclusion that she suffered economic harm.*

In her first effort to support her argument that her claims sufficiently allege but-for causation, Plaintiff reiterates her allegation of "[e]conomic and consequential damages relating to her current and future employment, including past and future lost earnings, lost short and long-term earning capacity, and damage to her professional reputation." *Id.* at 19 (citing ECF No. 48 ¶¶ 127, 151). However, as the government notes, these allegations give "little indication as to what types of damages [Plaintiff] may have incurred, how she incurred them, or in what amounts." ECF No. 49 at 16; ECF No. 51 at 11 (citing *Iqbal*, 556 U.S. at 663). Plaintiff fails to allege any facts describing an actual loss of income, a reduction in compensation or benefits, or any other concrete economic harm. And assuming for argument's sake that her reputation as a professional was damaged by the government's alleged failure to destroy and expunge her personal records, Plaintiff has not shown how this damage has manifested in a realized loss of income or other harm. In the absence of factual allegations describing a non-speculative injury, Plaintiff's generalized assertions of consequential damages fail to assert "actual, presently due money damages from the United States." *Taylor v. United States*, 73 Fed. Cl. 532, 545 (2006) (quoting *United States v. King*, 395 U.S. 1, 3 (1969)).

*ii. Plaintiff's conclusion that her ability to maintain security clearances or advance in her field was impaired.*

Next, Plaintiff cites her claim that the government "[i]mpaired and/or limited her ability at the Department or elsewhere to maintain and/or secure security clearances, to securing evaluative material and/or experiences that are integral to advancement, to preserving one's employment status; and/or to pursuing alternative employment opportunities." ECF No. 50 at 19 (citing ECF No. 48 ¶¶ 128, 152). It may appear that the Court is cherry-picking generalized language from Plaintiff's brief or presenting a summary of her argument, but that is not the case. The above-quoted language encompasses the entirety of Plaintiff's claim. And again, Plaintiff fails to connect the revocation of her security clearance to present, actual harms. To start, Plaintiff's security clearance was revoked from October 2015 to May 2017, ECF No. 48 ¶¶ 72–73, well before the settlement agreement between Plaintiff and the government was executed on March 8, 2019, *id.* ¶ 16. Therefore, the alleged downstream effects of that revocation—an impaired ability to maintain security clearances, to secure evaluative material and experiences integral to advancement, or to pursue alternative employment—cannot possibly be attributed to the alleged breach of the settlement agreement. *See Zulueta*, 2013 WL 363389, at *7 (granting the government's Rule 12(b)(6) motion where plaintiff failed to allege damages proximately caused by the alleged breach of the settlement agreement as the relief sought flowed from subsequent employment actions rather than the breach itself). Litigating the alleged breach of the settlement agreement is not an opportunity to relitigate the events that underlie the settlement itself.

What is more, even if Plaintiff had alleged that the government's breach directly and presently impaired her ability to maintain security clearances or to advance in her field, she has

still failed to allege specific facts supporting this harm. Plaintiff has not plausibly alleged *how* her ability to maintain a security clearance has damaged her: she has not alleged an instance in which she sought clearance and was denied, that she was ineligible for any specific position due to this denial of clearance, or that a position requiring such a clearance even existed and would otherwise be available to her. Plaintiff has similarly failed to enlighten the Court of what "evaluative material" or "experiences integral to advancement" she has been unable to secure. It is unclear what the nature of this material or experience is, the circumstances in which she would have obtained such material or experience but for the government's breach, or how this lack of evaluative material or experience has impacted her career. Plaintiff has not provided even the barest description of what advancement opportunities she has lost due to the government's alleged breach. Her allegations remain utterly untethered from the factual support necessary for elevation from the realm of speculation to the requirement of plausibility under RCFC 12(b)(6).

*iii. Plaintiff's conclusion that her ability to pursue other employment opportunities was impaired.*

Most illustrative of Plaintiff's speculation is her last claim: that the government's alleged breach

> [i]mpaired and/or limited employment opportunities that might otherwise be available in the absence of a breach due to knowing that the records to be destroyed or expunged remain accessible to colleagues at the Department and possibly other government agencies and its consequent deterrent effect on pursing [sic] certain opportunities at the Department or elsewhere.

ECF No. 50 at 20 (citing ECF No. 48 ¶¶ 129, 153). Precedent on this point is clear: a plaintiff fails to plausibly plead causation or damages if he or she does not allege facts showing that employment opportunities were denied as a direct result of the government's breach of a settlement agreement.

In *Fields*, discussed *supra*, a former government employee alleging discrimination settled a disability discrimination claim under which the government agreed to revise her termination record, seal her file, investigate alleged misconduct, and provide neutral references—an agreement the government later conceded that it breached. 147 Fed. Cl. at 354. The government argued in *Fields*, however, that the plaintiff had failed to establish causation or damages with reasonable certainty because she alleged no facts that she applied for qualified positions, was denied employment, or suffered any employment-related harm attributable to the alleged breach of the settlement agreement. *Id.* at 356. Judge Damich agreed:

> Plaintiff has failed to demonstrate that she would have been selected for one of the positions that she claims she would have applied to had the [Agency not breached] . . . . [I]n the absence of the Agency's breach, it is not evident that Plaintiff would have applied to the open positions, and even assuming that she would have applied, it is not evident that she would have been selected among the many well-qualified candidates. Even assuming that Plaintiff would have been selected, it is not evident that Plaintiff's new employer would not have learned

> about the Plaintiff's medical condition or the fact of her termination from speaking to one of the Plaintiff's former co-workers. Conversely, had Plaintiff applied to any of the positions that she says were available, notwithstanding the Agency's alleged breaches, it is not evident that the Agency would have provided an uncorrected version of Plaintiff's personnel file to a prospective employer, nor is it evident that a prospective employer would not have drawn negative inferences from the Agency's provision of a "neutral reference." Nor is it evident that Plaintiff would not have secured employment notwithstanding the Agency's breach.

*Id.* at 356–57. Accordingly, in the absence of such facts, Judge Damich was "unable to conclude that the Agency's breach is either the 'but for' cause or a substantial casual factor with respect to [the plaintiff's] failure to secure any of these positions and the associated pay." *Id.* at 357; *see also Westover v. United States*, 71 Fed. Cl. 635, 640 (2006) ("[W]hile plaintiff has claimed damages, the breach of the settlement agreement is not alleged to be the but-for cause of these damages. Plaintiff has proffered no allegations or evidence to show that the damage that he suffered by breach of the neutral references clause was the loss of his previous job . . . and the associated pay. He has never held any job for which he applied subsequent to entering the settlement agreement."). Moreover, Judge Damich held that awarding damages under such a speculative "lost opportunity theory" would have "place[d] [the plaintiff] in a position superior to the one it would reasonably have occupied had the breach not occurred." *Fields*, 147 Fed. Cl. at 357.

It is clear that the plaintiff in *Fields* failed to adequately support her claims—yet she pled more facts than what Plaintiff has pled here. Plaintiff has failed to plausibly allege that, but for the alleged breach, she would have obtained a job or promotion. It is not evident from the allegations in the complaint that there was even a position in which Plaintiff was interested, that an opening for that job existed during the relevant time period, or that Plaintiff was qualified for this *un*alleged position notwithstanding the alleged breach. Even assuming that such a position existed and that Plaintiff was qualified for it, there are no allegations that she applied for it or that she was rejected. And even assuming Plaintiff was qualified, applied, and was rejected, she did not allege that this hypothetical position would have been superior to her current employment or would have resulted in any compensable loss. Nor is it evident that a prospective employer for this unalleged position would have sought the information allegedly retained by the State Department, that the State Department would have provided it if asked, or that the provision of such information would have affected Plaintiff's employment prospects. In short, as in *Fields* (but even less so here), Plaintiff pleads no facts from which the Court could reasonably infer causation or damages. 147 Fed. Cl. at 357; *see also Rebish*, 134 Fed. Cl. at 320 (granting summary judgment where plaintiff "failed to produce any evidence that his inability to secure employment was causally related to any disclosure of information" by the agency, did not allege exclusion from any "specific position" due to a negative reference, and relied only on generalized, conclusory allegations that disclosures "negatively impacted" or "compromised" his employment prospects).

*iv. Granting Plaintiff's requested relief would be manifestly unfair.*

Not only did Plaintiff fail to support her claims with anything but conclusory statements but granting Plaintiff *any* relief under the allegations of the complaint would potentially put Plaintiff "in a position superior to the one [she] would reasonably have occupied had the breach not occurred." *Fields*, 147 Fed. Cl. at 357; *Westover*, 71 Fed. Cl. at 640 ("The court cannot grant monetary relief for the loss of a position to which a federal employee has not been appointed."). Absent allegations that Plaintiff applied for specific positions, awarding damages for hypothetical rejections would compensate Plaintiff for speculative harm and leave her better off than before the alleged breach.

Moreover, it would be inefficient and inappropriate to address these deficiencies in pleading for the first time during discovery. Plaintiff's allegations do not identify any lost employment opportunity, leaving the government without notice of what conduct allegedly harmed Plaintiff. As a result, the government would be required to use (1) a first round of discovery to determine what harms Plaintiff has alleged, and (2) a second round to then explore whether such harms could be proved—an approach inapposite to notice pleading. *See, e.g.*, *Twombly*, 550 U.S. at 555 (pleading requires that the defendant be put on notice of what the claim is and what grounds it rests). The government should not be required to engage in discovery to discern what harm it is being accused of causing, particularly where Plaintiff has failed to plausibly allege *any* facts supporting the damages element of a breach-of-contract claim.

In sum, Plaintiff has failed to plausibly plead any damages caused by the government's alleged breach.[7] Plaintiff bears the burden of alleging facts that permit a reasonable inference that her claimed damages were foreseeable, caused by the breach, and capable of proof with reasonable certainty. She has not done so. Rather than pleading concrete, nonconclusory facts demonstrating that her alleged harms would not have occurred but for the breach—or that the breach was a substantial factor in causing them—Plaintiff relies on generalized assertions and recitations of legal conclusions: Plaintiff's damages theory is that she missed out on *something*, but she does not inform the Court nor the government of what this something is. Moreover, her vague assertions of economic harm, the inability to maintain security clearances or advance her position, and hypothetical lost job opportunities fail to link the government's alleged breach to these supposed harms in a causal chain. Such allegations do not satisfy the pleading standards articulated in *Twombly* and *Iqbal* and are insufficient to state a claim for breach of contract. Accordingly, Plaintiff's contract claims fail to state a claim and must be dismissed under RCFC 12(b)(6).

---

[7] The closest Plaintiff comes to alleging specific facts is in her claim for "[e]conomic damages arising out of . . . the retention of counsel to attend a background investigation interview after she became aware of the breach." ECF No. 50 at 20 (citing ECF No. 48 ¶¶ 131, 155). But even this allegation lacks sufficient details and fails to "elevate [Plaintiff's] claim for relief to the realm of plausibility." *Laguna Hermosa*, 671 F.3d at 1288 (citing *Iqbal*, 556 U.S. 662).

**b. Neither Plaintiff's allegations under the implied covenant of good faith and fair dealing nor her requests for nominal damages cure her failure to adequately plead damages.**

Plaintiff also alleges damages for breach of the implied covenant of good faith and fair dealing; however, these allegations do not resuscitate the shortcomings in pleading discussed above. The implied covenant of good faith and fair dealing is imposed on each party in the performance and enforcement of a contract. *See Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205). The obligations imposed on the parties include the duty "not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). "Failure to fulfill that duty constitutes a breach of contract, as does failure to fulfill a duty 'imposed by a promise stated in the agreement.'" *Metcalf Constr.*, 742 F.3d at 990 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 235).

However, claims for damages under the implied covenant of good faith and fair dealing are held to the same pleading standard as damages arising from breach of contract—or any damages, for that matter. While Plaintiff may have plausibly alleged that the government acted in bad faith in executing the settlement agreement, this alone does not suffice to survive an RCFC 12(b)(6) motion. *See* ECF No. 50 at 23–24 (arguing that the government met the elements of breach of the implied covenant of good faith and fair dealing through its inaction, lack of diligence, and failure to mitigate damages after learning of the breach of the settlement agreement). As previously discussed, just as Plaintiff needed to allege facts to support *how* she was harmed by the government's alleged breach of contract, here, Plaintiff fails to provide facts to support *how* she was harmed from the alleged breach of the implied covenant of good faith and fair dealing. Thus, Plaintiff's complaint lacks the factual support to "elevate [her] claim[s] for relief to the realm of plausibility." *Laguna Hermosa*, 671 F.3d at 1288.[8]

---

[8] As the government notes, "[Plaintiff] fails to state a claim for a breach of the implied covenant of good faith and fair dealing because it is also duplicative of her breach of contract claim." ECF No. 51 at 16. Even if Plaintiff had properly alleged damages under a theory of breach of the implied covenant of good faith and fair dealing, this Count adds no new operative facts, elements, or theories of relief—it merely repackages her general breach claim. *Compare* ECF No. 48 ¶ 125(a)–(b) (alleging in Count II that the government failed to "destroy all copies of Plaintiff's EOGH medical records" and "expunge all of the records in Plaintiff's security file" in accordance with the settlement agreement), *with* ECF No. 48 ¶¶ 137–43, 146–47 (alleging in Count III that the government breached the implied covenant of good faith and fair dealing by failing to destroy medical records and expunge information from Plaintiff's security file). The Court agrees with the government that Plaintiff's allegations of breach of the implied covenant of good faith and fair dealing in Count III are "legally indistinguishable from [her] breach of contract allegation[s]" and would therefore be dismissed even if she had adequately pled damages. ECF No. 51 at 16 (alterations in original) (first quoting *Reliability & Performance Techs., LLC v. United States*, No. 22-13, 2024 WL 2478320, at *9 (Fed. Cl. May 23, 2024); then citing *Dotcom Assocs. I, LLC v. United States*, 112 Fed. Cl. 594, 600 (2013)).

In another attempt to get around her failure to allege damages, Plaintiff states that "to the extent that economic and consequential damages cannot be adequately established[,] . . . Plaintiff seeks nominal damages." ECF No. 48 ¶¶ 132, 156. Relying on Supreme Court precedent, Plaintiff contends that nominal damages constitute "damages" and, therefore, suffice to preserve her claim despite the absence of allegations establishing actual harm. *See* ECF No. 50 at 18 (citing *Tahoun v. Dep't of State*, No. CV 21-1658 (TJK), 2025 WL 1380426, at *5 (D.D.C. May 13, 2025) (quoting *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021))).

That argument is inapposite to the well-established rule that the Court of Federal Claims lacks authority to award nominal damages. *See, e.g.*, *McCarthy v. United States*, 171 Fed. Cl. 469, 481 (2024) (quoting *Stovall v. United States*, 94 Fed. Cl. 336, 345 (2010) ("[P]laintiff's inability to prove damages 'would be decisive, as this court lacks the authority to award nominal damages.'"); *Interstate Coatings, Inc. v. United States*, 7 Cl. Ct. 259, 262 (1985) (alteration in original) (citations omitted) ("It is true that '[a]n unexcused failure to perform a contract is a legal wrong. Action will lie for the breach although it causes no injury. Nominal damages are then awarded.' But this Court cannot award nominal damages."); *see also Perry v. United States*, 294 U.S. 330, 355 (1935) ("The question is whether he has shown damage to that extent, or any actual damage, as the Court of Claims has no authority to entertain an action for nominal damages."); *Grant v. United States*, 74 U.S. 331, 338 (1868) ("We cannot see that this is a case for even nominal damages . . . the Court of Claims was not instituted to try such a case.").

Thus, even if nominal damages qualify as "damages," *Uzuegbunam* does not bring such claims within this Court's jurisdiction. Nominal damages cannot be used as a jurisdictional hook to invoke the Court's authority or to cure Plaintiff's pleading deficiencies. Accordingly, Plaintiff's request for nominal damages cannot salvage her claim, and her claims remain barred under RCFC 12(b)(6).

## CONCLUSION

In conclusion, the Court grants the government's motion to dismiss under RCFC 12(b)(1) for lack of subject matter jurisdiction to the extent that Plaintiff's claims seek equitable relief or allege independent tort claims. However, the government's 12(b)(1) argument fails insofar as it argues that the settlement agreement did not contemplate monetary damages in the event of breach. Plaintiff's breach claims are nevertheless dismissed under RCFC 12(b)(6) for failure to plausibly allege damages. For the foregoing reasons, the Court **GRANTS** the government's motion to dismiss. The Clerk is directed to enter **JUDGMENT** accordingly.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge